**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE WOLF ORGANIZATION, LLC, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| JOSEPH D. DEROGATIS, and | ) | DEMAND FOR JURY TRIAL |
| JOSEPH  D. DEROGATIS d/b/a | ) | |
| floW HOME PRODUCTS, | ) | |
|     Defendants | ) | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND
BREACH OF SETTLEMENT AGREEMENT**

Introduction

1.      As set forth below, one day after Plaintiff  began using its new trademark on March 29, 2016, by posting it on its pages on social media websites, Defendants intentionally copied that trademark and began using it on Defendants' pages on social media websites in connection with the same type of product (PVC decking) sold by Plaintiff.  Attached hereto as Exhibit A is a side-by-side comparison of Plaintiff's trademark, and Defendants' infringing mark.  Defendants also are using Plaintiff's trademark "TEAKWOOD" to describe their PVC decking. As set forth below, Defendants' trademark infringement is in furtherance of their ongoing attempt to harass, harm, and unfairly compete with Plaintiff.

## Jurisdiction and Venue

2.      This Complaint is brought by Plaintiff under the statutes of the United States (15 U.S.C. § 1051 *et seq*.) (hereinafter, the "Lanham Act"), the laws of the Commonwealth of Pennsylvania, and the common law, for trademark infringement, unfair competition, and breach of contract, and seeks preliminary and permanent injunctive relief, damages, and other relief relating to Defendants' intentional and malicious infringement of Plaintiff's trademarks.

3.      This Court has subject matter jurisdiction over Plaintiff's claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

4.      This Court also has diversity jurisdiction over Plaintiff's claims because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391.

## The Parties

6.      Plaintiff The Wolf Organization, LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business in York, York County, Pennsylvania.   The Wolf Organization, Inc. merged with

and into The Wolf Organization, LLC on May 29, 2015, and at that time all of the properties, rights, privileges, powers, and franchises of The Wolf Organization, Inc. vested in The Wolf Organization, LLC., and all debts, liabilities, and duties of The Wolf Organization, Inc. became the debts, liabilities, and duties of The Wolf Organization, LLC.  (Hereinafter, Plaintiff The Wolf Organization, LLC is referred to as "WOLF" or as "Plaintiff.")

7.      WOLF's business includes selling WOLF-branded PVC decking to retailers located in over 20 states, including Pennsylvania, New Jersey, New York, Connecticut, and Maryland, and in Canada.

8.      WOLF's business includes selling WOLF-branded kitchen cabinets to retailers located in over 34 states, including Pennsylvania, New Jersey, New York, Connecticut, and Maryland, and in Canada.

9.      Defendant Joseph D. DeRogatis ("DeRogatis") is an adult individual who, upon information and belief, resides at 4 Blackberry Lane, Whitehouse Station, Hunterdon County, New Jersey 08889.

10.     Upon information and belief, DeRogatis holds himself out as doing business under the name "floW Home Products."

11.     Upon information and belief, "floW Home Products" is not a separate

legal entity.  (Hereinafter, DeRogatis, and DeRogatis d/b/a flow Home Products,

are sometimes collectively referred to as "Defendants.")

<u>The Prior Settlement Agreement</u>

12.     On or about April 24, 2015, The Wolf Organization, Inc. and

DeRogatis, as well as CEVN Corporation (an entity owned by DeRogatis), entered

into a Settlement Agreement, a copy of which is attached hereto as Exhibit B,

regarding a prior business relationship.

13.     The Settlement Agreement was signed on behalf of The Wolf

Organization, Inc. on April 24, 2015.

14.     The Settlement Agreement was signed on behalf of CEVN

Corporation, and on behalf of Joseph DeRogatis, individually, by DeRogatis on

April 24, 2015.

15.     WOLF has performed all of its obligations under the Settlement

Agreement.

16.     Paragraph 14 of the Settlement Agreement states:

The Parties hereby consent to the specific personal jurisdiction of the courts of
Pennsylvania with respect to any action arising from or to enforce the terms of this
Settlement Agreement.

17.     Paragraph 7 of the Settlement Agreement states:

CEVN and DeRogatis, and any entity managed or controlled by either of them, and the CEVN Releasees, shall: (a) immediately cease and desist using, and shall not attempt to register, the marks or words "TimberWOLF" or "WOLF" in any stylization, any mark, phrase or word including or incorporating the word "Wolf" in any stylization, or any design, logo or depiction of a wolf or animal that could be reasonably mistaken for a wolf in connection with any product, service, business, or venture; (b) immediately cease and desist using, and shall not attempt to register, the marks "Tropical Hardwood Collection," "Amberwood," "Rosewood," "Weathered Ipe," and any of the trademarks, color names or pattern names used by WOLF in connection with its decking products; and, (c) without limiting the foregoing Section 7(a) or Section 7(b), CEVN and DeRogatis shall remove from any Facebook page(s), and all other social media platforms or other advertising owned or controlled by them, all uses of the trademarks and terms identified and referenced in Section 7(a) and Section 7(b). CEVN and DeRogatis understand and acknowledge that any breach of this provision of this Settlement Agreement will cause irreparable harm to WOLF, such that, upon proof of such breach, WOLF would be entitled to injunctive relief, including immediate, emergency, special, preliminary, and permanent injunctive relief, as well as any monetary damages caused by such breach.

<u>Factual History Giving Rise To This Complaint</u>

18.     WOLF has been marketing its WOLF-branded PVC decking and kitchen cabinets under the name "WOLF Home Products" since 2012.

19.     WOLF PVC decking comes in a various types of colors and patterns; each of these types has a "color name" that WOLF uses to identify it to consumers.

20.     Since October 21, 2015, Wolf continuously has used the term TEAKWOOD as a trademark which identifies a particular color and pattern of Wolf's decking products.

21.     On or about May 5, 2015, DeRogatis sought to register as an internet domain name: "flowhomeproducts.com."  A copy of the registration information related to the aforesaid domain name registry is attached hereto as Exhibit C. Upon information and belief, this was the first time that DeRogatis used the name "flow home products."

22.     On or about July 5, 2015, Defendants began making posts on the social media website "Facebook," using the name "floW Home Products," and describing it as being in the business of selling PVC decking.  Upon information and belief, Defendants intentionally used the typeface "floW" because it is "Wolf" spelled backwards, and intentionally used the words "Home Products" in order to mimic "Wolf Home Products."

23.     Defendants began making posts on the social media website "LinkedIn," using the name "floW Home Products," and describing it as being in the business of selling PVC decking.

24.     Defendants repeatedly have made posts on the Facebook pages of building products retailers who are customers or potential customers of WOLF, using the name "floW Home Products," and describing it as being in the business of selling PVC decking.

25.     Craig Danielson is the President of WOLF, and has been the President of WOLF since January 1, 2014.

26.     On or about February 8, 2016, Defendants added, to the "floW Home Products" pages on Facebook, the phrase "The Danielson Collection," and described "The Danielson Collection" as a type of PVC decking.  Upon information and belief, Defendants intentionally used the name "Danielson" because Craig Danielson is the President of WOLF.

27.     Since February 8, 2016, Defendants have used the color name "TEAKWOOD" to describe the color and pattern of the "The Danielson Collection" PVC decking.  Upon information and belief, when they used the color name Teakwood, Defendants knew that WOLF had used and continued to use the color name "TEAKWOOD" to identify a type of PVC decking sold by WOLF.

28.     On February 23, 2016, WOLF filed trademark applications with the United States Patent and Trademark Office in order to register the following trademarks:





29.     Attached hereto as Exhibit D are printouts from the United States Patent and Trademark Office Trademark Electronic Search System that reflect the details of the trademark applications filed by WOLF.

30.     Hereinafter, the trademarks described in Paragraphs 28- 29, above, are referred to collectively and severally as the "WOLF Design Mark."

31.     Hereinafter, the trademark TEAKWOOD used by WOLF, together with the WOLF Design Mark, are collectively referred to as the "WOLF Marks."

32.     WOLF is the owner of all right, title and interest in and to the WOLF Marks.

33.     On March 29, 2016, WOLF began to use, and has since continued to use, the WOLF Design Mark on WOLF'S website: www.wolfleader.com.  A copy of the "Home page" of this website is attached hereto as Exhibit E.

34.     On March 29, 2016, WOLF began to use, and has since continued to use, the WOLF Design Mark on its pages on the social media sites:  Instagram; Facebook; Twitter; and, LinkedIn to promote its products and services.  Attached hereto as Exhibit F are copies of these postings made on these four social media sites by WOLF on March 29, 2016.

35.     On March 30, 2016, on the floW Home Products Facebook page, Defendants posted for the first time a logo copying and infringing the WOLF

Design Mark.   (Hereinafter, the logo posted by Defendants is referred to as the "Infringing Logo.")  A copy of the Infringing Logo posted by Defendants is attached hereto as Exhibit G.  This Facebook page states "Flow Home Products updated their profile picture" and "Flow Home Products updated their cover photo."

36.     As reflected on the attached Exhibit G, this "updated profile picture" was first posted on March 30, 2016.  Since that time, all of the floW Home Products postings using Facebook use this infringing copy of the WOLF Design Mark.

37.     In order to demonstrate the similarity between the WOLF Design Mark and the Infringing Logo, attached hereto as Exhibit A is a picture of the WOLF Design Mark next to a picture of the Infringing Logo.

38.     Hereinafter, the Infringing Logo, and the word "TEAKWOOD" as used by Defendants, are collectively referred to as the "Infringing Marks."

39.     On April 4, 2016, Defendants posted the Infringing Marks on the floW Home Products Twitter page. A copy of this post is attached hereto as Exhibit I.

40.     Defendants posted the Infringing Logo on the floW Home Products LinkedIn page.  A copy of this post is attached hereto as Exhibit I.

41.     Defendants posted the Infringing Logo on the floW Home Products Instagram page.  A copy of this post is attached hereto as Exhibit J.

42.     Defendants state and represent through their web posts that floW Home Products is in the business of selling PVC decking, that floW Home Products will begin offering to sell PVC decking later in 2016, and that floW Home Products will begin hiring in Summer 2016.  Copies of these posts are attached hereto as Exhibit K.  As demonstrated by these representations, Defendants are in competition with WOLF.

43.     In some instances where WOLF has posted on WOLF's social media accounts using the WOLF Design Mark, Defendants have soon posted on the same account a response from floW Home Products using the Infringing Logo.  An example of this from WOLF's Instagram page is attached hereto as Exhibit L.

44.     The use by Defendants of the Infringing Marks infringes WOLF's trademark and constitutes unfair competition.

45.     Defendants' infringement is intentional.

46.     Upon information and belief, Defendants plan to continue such infringement.

47.     Defendants' infringement is malicious and intended to harass and harm WOLF.

48.     WOLF does not have any means of controlling products offered for sale or sold by Defendants.

49.     Defendants have engaged and are engaging in unlawful activity with an intent to cause confusion among the purchasing public, and to trade on the goodwill associated with WOLF's products.

## COUNT I

## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1125

50.     Paragraphs 1- 49, above, are incorporated herein by reference.

51.     This claim is brought under 15 U.S.C. §1125 for infringement of the WOLF Marks.

52.     Defendants have used and are using the Infringing Marks in connection with the advertising and offer for sale of goods in commerce in such a manner as to create a likelihood of confusion  with the WOLF Marks among prospective purchasers.

53.     Defendants' use of the Infringing Marks induces prospective purchasers and others to believe, contrary to fact, that the goods offered or to be offered for sale by Defendants are made, sponsored, or otherwise approved by, or connected with, WOLF.

54.     Defendants' acts have damaged and impaired that part of goodwill symbolized by the WOLF Marks to WOLF's irreparable damage.

55.     In the Settlement Agreement previously signed by DeRogatis, he has agreed and admitted that his use of any design or logo including the "depiction of a wolf or animal that could be reasonably mistaken for a wolf in connection with any product, service, business, or venture…  will cause irreparable harm to WOLF, such that, upon proof of such breach, WOLF would be entitled to injunctive relief, including immediate, emergency, special, preliminary, and permanent injunctive relief, as well as any monetary damages caused by such breach."  See Paragraph 17, *supra*.

56.     Defendant's use of the Infringing Marks in the manner alleged constitutes trademark infringement and unfair competition within the meaning of 15 U.S.C. § 1125(a)(1)(A).

57.     Upon information and belied, Defendant had actual knowledge of WOLF's use of the WOLF Marks and ownership of the WOLF Marks when Defendants began using the Infringing Marks.

58.     Upon information and belief, Defendants have infringed and are willfully infringing the WOLF Marks.

13

59.     Upon information and belief, Defendants have used and are using the WOLF intending to cause WOLF harm and damage.

60.     Defendants' willful misconduct makes this an exceptional case entitled WOLF to have any monetary damages trebled and to recover its attorney fees under 15 U.S.C. § 1117.

61.     Defendants' acts of trademark infringement and unfair competition are causing WOLF irreparable harm and damage to reputation.  WOLF cannot be compensated by monetary remedies alone, and WOLF has no adequate remedy at law for Defendants' infringement of its rights. Upon information and belief, unless enjoined by this Court, Defendants will continue these acts of trademark infringement and unfair competition to WOLF's immediate and irreparable harm. WOLF is therefore entitled to injunctive relief against Defendants, and to recover any damages proven to be caused, or any profits of Defendants which have been earned unjustly, by reason of Defendants' acts of infringement.

## COUNT II

## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a)

62.     Paragraphs 1- 61, above, are incorporated herein by reference.

63     Defendants' unauthorized use of the Infringing Marks in connection with the advertising and sale of Defendants' goods constitutes false designation of origin and false description within the meaning of 15 U.S.C. §1125(a)(1)(A).

64     Defendants' unauthorized use of the Infringing Marks constitutes unfair competition, entitling WOLF to the remedies prescribed in 15 U.S.C. §1117(a).

65     Defendants' willful misconduct makes this an exceptional case, entitling WOLF to have any monetary damages trebled and to recover its attorney fees under 15 U.S.C. § 1117(a).

66     Defendants' acts of trademark infringement and unfair competition are causing irreparable harm and damage to WOLF's reputation.  WOLF cannot be compensated by monetary remedies alone, and WOLF has no adequate remedy at law for Defendants' acts of unfair competition complained of herein. Upon information and belief, unless enjoined by this Court, Defendants will continue these acts of trademark infringement and unfair competition to WOLF's immediate and irreparable harm.  WOLF is therefore entitle to injunctive relief against Defendants, and to recover any damages proven to be caused, or any profits of Defendants which have been earned unjustly, by reason of Defendants' acts of unfair competition.

## COUNT III

## <u>TRADEMARK INFRINGEMENT UNDER THE COMMON LAW</u>

67      Paragraphs 1- 66 above, are incorporated herein by reference.

68.     The nature, probable tendency, and effect of Defendants' use of the Infringing Marks in the manner alleged is to enable the Defendants to deceive the public by passing off their goods as being made, sponsored, or otherwise approved by or connected with WOLF.

69.     Defendants' acts of trademark infringement and unfair competition are causing WOLF irreparable harm and damage to reputation.  WOLF cannot be compensated by monetary remedies alone, and WOLF has no adequate remedy at law for Defendants' infringement of its rights. Upon information and belief, unless enjoined by this Court, Defendants will continue these acts of trademark infringement and unfair competition to WOLF's immediate and irreparable harm. WOLF is therefore entitled to injunctive relief against Defendants, and to recover any damages proven to be caused, or any profits of Defendants which have been earned unjustly, by reason of Defendants' acts of infringement and unfair competition.

70.     Defendants' conduct is intentional, willful, outrageous, malicious, and done with evil motive, entitling WOLF to recover punitive damages in addition to injunctive relief and other monetary damages.

## COUNT IV

## **UNFAIR COMPETITION UNDER THE COMMON LAW**

71.     Paragraphs 1- 70, above, are incorporated herein by reference.

72.     Defendants' aforesaid conduct constitutes unfair competition under the common law.

73.     WOLF cannot be compensated by monetary remedies alone, and WOLF has no adequate remedy at law for Defendants' acts of unfair competition complained of herein. Upon information and belief, unless enjoined by this Court, Defendants will continue these acts of unfair competition to WOLF's immediate and irreparable harm.  WOLF is therefore entitled to injunctive relief against Defendants, including an injunction forbidding Defendants from any further violation of all of WOLF's rights, as provided in Paragraph 7 of the Settlement Agreement, and to recover any damages proven to be caused, or any profits of Defendants which have been earned unjustly, by reason of Defendants' acts of unfair competition.

74.     Defendants' conduct is intentional, willful, outrageous, malicious, and done with evil motive, entitling WOLF to recover punitive damages in addition to injunctive relief and other monetary damages.

## COUNT V

## BREACH OF SETTLEMENT AGREEMENT v. JOSEPH DEROGATIS

75.     Paragraphs 1- 74, above, are incorporated herein by reference.

76.     By using the Infringing Marks, which are so similar to the WOLF Marks so as to constitute trademark infringement and unfair competition, DeRogatis is in breach of the Settlement Agreement by his use of trademarks used by WOLF in connection with its decking products.  See Exhibit B, Settlement Agreement, at ¶7.

77.     DeRogatis is in breach of the Settlement Agreement because he is using the Infringing Logo that depicts "a wolf or animal that could be reasonably mistaken for a wolf" in connection with the product PVC decking and in connection with the Defendants' business venture known as floW Home Products. See Exhibit B, Settlement Agreement, at ¶7.

78.     DeRogatis is in breach of the Settlement Agreement, which provides that he shall "immediately cease and desist using… and any of the trademarks, color names or pattern names used by WOLF in connection with its decking

products," because he is using the Infringing Logo, and because he is using the word "TEAKWOOD" in connection with the product PVC decking and in connection with the Defendants' business venture known as floW Home Products. See Exhibit B, Settlement Agreement, at ¶7.

79.     DeRogatis's breach of the Settlement Agreement is the proximate cause of harm and damage to WOLF, including ongoing irreparable harm and monetary damages, which monetary damages include but are not limited to the $25,000 WOLF paid to DeRogatis in performance of the Settlement Agreement.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff The WOLF Organization, Inc. demands a trial by jury on all issues so triable, and demands judgment in its favor, together with attorney fees and costs, and against Defendants Joseph D. DeRogatis and Joseph D. DeRogatis d/b/a floW Home Products, for the following:

1.  That the Court enter judgment in Plaintiff's favor, together with costs, and against Defendants on all claims herein.

2.  That Defendants be adjudged to have infringed Plaintiff's rights in the WOLF Marks and to have engaged in unfair competition in violation of 15 U.S.C. § 1125 by its use of the Infringing Marks.

3. That Defendants be adjudged to have infringed Plaintiff's rights in the WOLF Marks and to have engaged in unfair competition in violation of the common law.

4. That Defendants' infringement and engagement in unfair competition be adjudged willful and deliberate.

5. That, pursuant to 15 U.S.C. § 1116(a), and pursuant to the common law, Defendants, and any officers, employees, or agents thereof, and any persons in active concert with any of them, and any entity managed or controlled by either of them, be preliminarily and permanently restrained and enjoined from directly or indirectly infringing or otherwise violating Plaintiff's trademark rights by the following:

    a. Using in any manner or seeking to register in any manner the Infringing Marks, or any other mark, design, or trade dress that resembles the WOLF Marks, either alone or in combination with any word, phrase, depiction, or design, and any other mark confusingly similar to the WOLF Marks, in connection with advertising or offering to sell or selling any goods or services, or in connection with any business in competition with or planning to be in competition with WOLF.

b.  Using in any manner or seeking to register in any manner any trademark, service mark, trade name, trade dress, design, configuration, or any combination thereof that would imitate, resemble or suggest the WOLF Marks.

c.  Using, or attempting to register, the marks or words "TimberWOLF" or "WOLF" in any stylization, any mark, phrase or word including or incorporating the word "Wolf" in any stylization, or any design, logo or depiction of a wolf or animal that could be reasonably mistaken for a wolf in connection with any product, service, business, or venture; using, or attempting to register, the marks "Teakwood," "Tropical Hardwood Collection," "Amberwood," "Rosewood," "Weathered Ipe," and any of the trademarks, color names or pattern names used by WOLF in connection with its decking products.

d.  Otherwise infringing WOLF's trademarks and trade dress.

e.  Unfairly competing with WOLF or otherwise injuring WOLF's business reputation in any manner whatsoever.

6.  That, pursuant to 15 U.S.C. § 1118,  and pursuant to the common law, Defendants be directed to deliver up for destruction all advertisements,

labels, signs, prints, packages, wrappers, and all materials relating to any website, and all other materials in their possession or under their control that resemble or bear a depiction of the Infringing Marks or any other mark or trade dress containing any reproduction, copy, or colorable imitation of the WOLF Marks, and all plates, matrices, and other means of making or duplicating the same.

7. That, Defendants be directed to remove the Infringing Marks from any website or web account or social media platform to which they have access or control, including but not limited to Facebook, Twitter, Instagram, and LinkedIn.

8. That Defendants be directed to remove from any website or web account or social media platform which they control, including but not limited to Facebook, Twitter, Instagram, and LinkedIn and the website flowhomeproducts.com, any and all uses by Defendants of the marks or words "TimberWOLF" or "WOLF" in any stylization, any mark, phrase or word including or incorporating the word "Wolf" in any stylization, or any design, logo or depiction of a wolf or animal that could be reasonably mistaken for a wolf in connection with any product, service, business, or venture; any and all uses by Defendants of the marks "Teakwood,"

"Tropical Hardwood Collection," "Amberwood," "Rosewood," "Weathered Ipe," and any of the trademarks, color names or pattern names used by WOLF in connection with its decking products.

9. That, pursuant to 15 U.S.C. § 1117, and pursuant to the common law, Defendants account and pay to Plaintiff damages in an amount sufficient to fairly compensate it for the injury it has sustained, plus any profits that are attributable to any sale of goods by Defendants under the Infringing Marks, and further that the amount of the monetary award be trebled in view of the willful and deliberate nature of Defendants' unlawful conduct.

10. That, pursuant to 15 U.S.C. § 1117, this case be declared exceptional because of the Defendants' willful and deliberate acts of trademark infringement and unfair competition, and that Defendants be ordered to pay to Plaintiff the amount of attorney fees incurred by Plaintiff in bringing and prosecuting  this action.

11. That Defendant DeRogatis, in addition to the injunctive relief and monetary damages set forth above, be ordered to pay to Plaintiff the amount of $25,000.

12. That the Defendants be adjudged jointly and severally liable to Plaintiff

for punitive damages, in an amount to be determined.

McNEES WALLACE & NURICK LLC


By: /s/ Donald B. Kaufman
Donald B. Kaufman (Pa. I.D. No. 49674)
Sarah Hyser-Staub (Pa. I.D. No. 315989)
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 237-5373 (T)
(717) 260-1708 (F)
dkaufman@mwn.com

*Attorneys for Plaintiff*


Dated:  April 26, 2016

## Verification

I, Craig Danielson, declare as follows:

1.  I am the Chief Executive Officer of The Wolf Organization, LLC.

2.  I verify under penalty of perjury that the facts set forth in the foregoing Complaint are true and correct.  28 U.S.C. § 1746.

Executed on April 25th, 2016.

Craig Danielson